IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                          )
                                )   Chapter 7
DONALD RAY WINCHESTER,          )
                                )   Bankruptcy No. 06-01185
        Debtor.                 )

## ORDER RE MOTION TO AVOID LIEN

Trial was held on January 11, 2007 in the above-captioned matter.  Debtor Donald Winchester appeared with Attorney Ann Wilson.  Wells Fargo Bank, N.A. appeared by Attorney Kara Sinnard.  Evidence was presented after which the Court took the matter under advisement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF THE CASE

Debtor seeks to avoid a lien held by Wells Fargo Bank.  He asserts the lien has attached to personal property which he claims exempt.  The Bank asserts its lien is consensual or a purchase-money security interest and not avoidable.

## FINDINGS OF FACT

Debtor filed a Chapter 7 petition on September 29, 2006.  On September 25, 2006, several days prior to the filing of the Chapter 7 petition, a judicial lien was recorded in Linn County in Case No. EQCV 55492 in favor of Wells Fargo Bank in the amount of $28,343.26 plus interest, costs and attorney's fees of $964.50.  Debtor's property to which the lien attaches is "all inventory, accounts, equipment and general intangibles."  Debtor seeks to avoid the lien under 11 U.S.C. § 522(f)(1)(A) or (B).

The property in question consists of three categories: (1) tools of the trade which Debtor uses for his piano repair and tuning business; (2) a Global Positioning System (GPS) unit; and (3) a piano dolly.  At the time of hearing, it was generally agreed that the tools of the trade are exempt property and not subject to a purchase-money security interest.  It was also agreed between the parties that the lien on the GPS is a purchase-money security interest.

Therefore, the only matter at issue is a piano dolly listed in Debtor's schedules as having a value of approximately $4,000. Two issues surround the alleged lien on this piano dolly.  The

first is whether the Bank's judicial lien created on September 25, 2006 can be avoided under § 522(f)(1)(A).  The Bank asserts that its lien is not avoidable under the judicial lien statute.  It argues that it had a consensual lien as a result of properly obtained and executed agreements.  The judicial lien came into existence after Debtor failed to pay the Bank loans, when the Bank sued Debtor and judgment entered shortly before the filing of the bankruptcy petition.  The Bank asserts that enforcement of a consensual lien through foreclosure or an entry of a judgment does not convert the consensual security interest into an avoidable judicial lien.

The second issue is whether the security agreement for the piano dolly created a purchase-money security interest.  The record is somewhat murky in this regard.  A fair construction of the evidence appears to establish that when Debtor was entering into the piano business he got SBA loans which were financed through Wells Fargo Bank.  As to the piano dolly, Debtor says that the Bank does not have a purchase-money security interest under the SBA loan.  He testified that the funds he used to purchase the piano dolly came from other loans, not the SBA loan. The Bank wanted receipts after he purchased various items. Debtor testified he gave the Bank receipts for all his purchases, whether they were purchased with funds from the SBA loan or from other sources.

The Bank, however, places a somewhat different spin on the evidence.  It takes the position that all the items for which it received receipts from Debtor were collateral for the SBA loan and it has a purchase-money security interest in the piano dolly. Debtor could go out and look at and acquire items and once the Bank got a receipt, it would put money in Debtor's account for Debtor's checks to clear the Bank.  The Bank asserts the money that was put into the account was earmarked for the purchase of these specific items.  In other words, Debtor shopped for a piano dolly, he entered into some type of an agreement with the seller, and then presented a receipt to the Bank which then placed that amount of money into the account which would allow the check to clear or the item to be paid for from that account.  The Bank asserts that this is adequate to create a purchase-money security interest.

### CONCLUSIONS OF LAW

Debtor seeks to avoid the Bank's lien under 11 U.S.C. § 522(f)(1)(A) or (B), which state, in pertinent part:

2

(f)(1) [T]he debtor may avoid the fixing of a lien on
an interest of the debtor in property to the extent
that such lien impairs an exemption to which the debtor
would have been entitled under subsection (b) of this
section, if such lien is--

    (A) a judicial lien, other than a judicial lien
that secures a debt of a kind that is specified in
section 523(a)(5); or

    (B) a nonpossessory, nonpurchase-money security
interest in any--

        . . .

        (ii) implements, professional books, or
tools, of the trade of the debtor or the trade of a
dependent of the debtor.

11 U.S.C. § 522(f).  The Bank agrees that the piano dolly and
other tools are exempt tools of Debtor's trade.  It also agrees
that it has not taken possession of these items.  As discussed
above, the issues for the Court are whether the Bank's lien is an
avoidable judicial lien under subsection (A) or is an avoidable
nonpurchase-money security interest under subsection (B).

### JUDICIAL LIEN

    The Bank argues that it has a consensual lien which is not
avoidable under § 522(f)(1)(A) even though it was reduced to
judgment prepetition.  There are distinctions between a judicial
lien and a consensual security interest.  In re Vaughan, 311 B.R.
573, 583 (B.A.P. 10th Cir. 2004).

    It is the origin of the creditor's interest rather than
    the means of enforcement that determines the nature of
    the lien.  Just because a creditor resorts to the
    judicial process to enforce the lien, it does not mean
    the lien is a judicial lien.

Id.  Only a judicial lien can be avoided under § 522(f)(1)(A).
In re Carpenter, 252 B.R. 905, 914 (E.D. Va. 2000).  "[T]he fact
that a creditor seeks judicial action in order to have its lien
recognized or enforced does not make the lien a judicial lien;
the determinative inquiry is whether the parties agreed to the
creation of a lien."  Id.  In an analogous situation, this Court
has stated that a judgment on a real estate mortgage does not
convert the consensual mortgage lien into a judgment lien

3

avoidable under § 522(f).  In re Worley, No. 96-10450, slip op.
at 4 (Bankr. N.D. Iowa Dec. 10, 1996); see also In re Sinnard, 91
B.R. 850, 854 (Bankr. N.D. Iowa 1988) (same).

       Based on the foregoing, the Court finds the Bank's lien is
not avoidable under § 522(f)(1)(A) as a judicial lien.  The lien
was originally created by a Commercial Security Agreement dated
July 14, 2004.  This is a consensual security interest.  It did
not transform into an avoidable judicial lien by the Bank's
resort to the judicial process to enforce it.

## PURCHASE-MONEY SECURITY INTEREST

       The Bank also argues it has a purchase-money security
interest in the piano dolly which is not avoidable under
§ 522(f)(1)(B).  As the Bankruptcy Code does not define
"purchase-money security interest", the Court applies state law
to determine whether one exists.  In re Hansen, 85 B.R. 821, 824
(Bankr. N.D. Iowa 1988).  Generally, the debtor bears the burden
of proving by a preponderance of the evidence all the elements
required to establish entitlement to lien avoidance under
§ 522(f).   In re Soost, 262 B.R. 68, 74 (B.A.P. 8th Cir. 2001).
Under Iowa Code sec. 554.9103(7), however, the secured party
claiming a purchase-money security interest in nonconsumer-goods
transactions has the burden of establishing the existence and
extent of this interest.  See also In re Gonzales, 206 B.R. 133,
135 (Bankr. N.D. Tex. 1997) (stating secured creditor bears
burden of showing it has a security interest in lien avoidance
matter).

       Iowa law states that a "purchase-money obligation" means "an
obligation of an obligor incurred as all or part of the price of
the collateral or for value given to enable the debtor to acquire
rights in or the use of the collateral if the value is in fact so
used."  Iowa Code § 554.9103(1)(b).  Simply put, it is a secured
loan for the price of new collateral.  Farmers Coop. Elevator Co.
v. Union State Bank, 409 N.W.2d 178, 180 (Iowa 1987); In re
McAllister, 267 B.R. 614, 619 (Bankr. N.D. Iowa 2001).  It arises
when a lender gives present consideration enabling a borrower to
acquire an item.  Hansen, 85 B.R. at 824.

       Some courts hold that a creditor may obtain a purchase-money
security interest when the debtor receives the loan proceeds
after purchasing the collateral.  First Nat'l Bank v. Lubbock
Feeders, L.P., 183 S.W.3d 875, 883 (Tex. App. 2006).  Under this
analysis, a creditor receives a purchase-money security interest
"when the loan advance is 'closely allied' with the debtor's
purchase of the collateral at issue."  Id.  For example, loan

4

certificates showing the loan advance amount and specific cattle
relating to the advance were "closely allied" with the debtor's
cattle purchases, establishing a purchase-money security interest
in the cattle.  Id.  One court has refused to find a lien was a
purchase-money security interest where the money was borrowed for
the general operation of a stud farm and not for any purchase of
a particular item.  In re Cass, 104 B.R. 382, 388 (Bankr. N.D.
Okla. 1989); see also G. Blaine Schwabe III  and Sarah A. Hall,
Property Valuation and Avoidance Issues, 47 Consumer Fin. L.Q.
Rep. 413, 419 (Fall 1993).

    Based on the foregoing, the Court concludes that the Bank
does not have a purchase-money security interest in the piano
dolly.  Debtor testified that the money to purchase the piano
dolly did not come from the SBA loan with the Bank.  Documents
attached to the Bank's Objection to Debtor's Motion to avoid lien
fail to show any specific infusion of cash into Debtor's checking
account from SBA loans at the time Debtor wrote the check to pay
for the dolly.  Debtor sufficiently explained why the Bank had a
copy of the receipt for this purchase.  He was turning over all
receipts to the Bank regardless of whether the purchases were
made with SBA loan funds.  The Bank has provided no evidence to
refute Debtor's testimony.

    While perhaps not dispositive, the Court also notes that
Debtor wrote the check for the piano dolly on July 22, 2004 and
it was processed by the bank on July 26, 2004.  This is prior to
the date the Bank first disbursed SBA loan funds to Debtor,
which, according to the SBA Settlement Sheet, was on August 6,
2004.  Additionally, it is noteworthy that the piano dolly is not
specifically described as collateral in the security agreement.
The SBA loan appears to be a general business loan.

    The Bank's lien on the piano dolly is an avoidable
nonpossessory, nonpurchase-money security interest.  The Bank
failed to meet its burden of proof that Debtor purchased the
piano dolly with funds from the SBA loan.  Debtor has met his
burden to prove that the lien is avoidable under § 522(f)(1)(B).
The Bank's lien on the remainder of Debtor's exempt tools of the
trade is likewise avoidable.  Because the parties agree that the
Bank's lien on the GPS unit is a purchase-money security
interest, it is not avoidable under either § 522(f)(1)(A) or (B).

    **WHEREFORE**, Debtor's Motion to Avoid Lien is GRANTED IN PART.

    **FURTHER**, by agreement of the parties, Wells Fargo Bank's
lien on Debtor's GPS unit is not avoidable under § 522(f)(1).

**FURTHER**, pursuant to the foregoing, the Bank's lien on Debtor's piano dolly and the remainder of his exempt tools of the trade is avoidable under § 522(f)(1)(B).

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED:   February 5, 2007


_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE